IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Esther F. Janoff**<br>25 Washington Lane<br>Apt, 409<br>Wyncote PA 19095.<br><br>       Plaintiff,<br><br>v.<br><br>**Trustees of the**<br>**University of Pennsylvania**<br>3400 Spruce St.<br>Philadelphia, PA 19104<br><br>       Defendant. | Civil Action No.<br><br><br>**Jury Trial Demanded** |

### I. Nature of the Case

1.    Defendant University of Pennsylvania drove Plaintiff Esther F. Janoff from her nursing job at the University of Pennsylvania Hospital ("HUP" or "Hospital") by refusing to adjust her work hours after she discovered that the disease of polymalmyalgia rheumatica ("PMR") caused her to experience fatigue and stiffness by early evening. Although HUP knew of her physician's restrictions of no evening or night hours, and had even promised her only daytime hours, when it came time to start, HUP scheduled her to work evening hours. Further, even though she was returning from leave under the Family and Medical Leave Act, HUP gave her a lower paying job instead of the same or an equivalent position.

2. After working until 7 pm for several months, Janoff requested the daytime hours that her doctor had required and that HUP had promised in the first place. Showing absolutely no consideration for Janoff's illness, HUP refused to grant Janoff's requested reasonable accommodation of daytime hours. Because of fatigue and stiffness arising in the early evening and HUP's refusal to make a reasonable accommodation, Janoff was compelled to resign. She brings this action for discrimination under the Americans with Disabilities Act, the Pennsylvania Human Relations Act, and the Family and Medical Leave Act.

## II. Parties

3. Plaintiff Janoff is an adult individual residing at 25 Washington Lane, Apt. 409, Wyncote, PA.

4. Defendants Trustees of the University of Pennsylvania were Janoff's employer and operate the University of Pennsylvania Hospital. All acts alleged herein made at or by the Hospital and its agents were made by or on behalf of the Trustees of the University of Pennsylvania.

## III. Jurisdiction and Venue

5. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law, the Americans with Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 1201 *et. seq.*

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to determine Plaintiff's related state law claims arising under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq.*

7. Venue is proper in this District under 28 U.S.C. § 1391(b) and 29 U.S.C. §1132(e) because the unlawful employment practices alleged occurred in this District and because both parties reside in this District.

### IV. Factual Background

8. Having worked as an R.N. for 35 years, Janoff was first offered a job at the Hospital on October 29, 2008 to commence on November 11, 2008. At the time, her responsibilities entailed "Bed Management, Case Management, and the Transfer Center." This job involved arranging for the provision of medical needs of patients arriving from other hospitals – specifically, obtaining the medical history in advance, arranging for an attending physician to accept the patient, and arranging for the patient's placement in a particular Hospital unit. Her starting pay was $42.50 an hour and it was raised to $43.33. She earned about $90,000 a year.

9. At the end of 2009, she was diagnosed with PMR. The Mayo Clinic website describes PMR as "… an inflammatory disorder that causes muscle pain and stiffness, primarily in your neck, shoulders, upper arms, hips and thighs."[1] The website states that most people who develop PMR are over 65 and that it rarely affects people under 50. The United States National Library of Medicine website summarizes the symptoms: "The most typical

---

[1] http://www.mayoclinic.com/health/polymyalgia-rheumatica/DS0044

symptom is pain and stiffness in both shoulders and the neck. This pain usually progresses to the hips, and there is fatigue too." Janoff experienced stiffness and fatigue.

10. In or about April 2010, Janoff requested a leave under the Family and Medical Leave Act, which was granted. She took a leave beginning in approximately May 2010.

11. By July, she arranged to return to work. She requested that she not work evenings, nights, or 12-hour shifts. Her request for no evenings, nights, or 12-hour shifts was made through a "Certification to Return to Work" signed by her physician.

12. The Hospital responded to the Certification to Return to Work by offering her a job that did not include evenings, nights, or 12-hour shifts. The offer was for a position different from bed management, specifically as a Pre-Certification Coordinator in the Admissions Center. That job had a lower pay of $32.25 an hour.

13. Despite stating that it would comply with her Certification to Return to Work and despite the fact that Precertification RN's worked in the Admissions Center at least as early as 7.30 am. until 4 pm, the Hospital put her on a shift from 10.30 am until 7 pm. The Hospital, therefore, breached the terms of its own offer for Janoff's return to work.

14. Janoff commenced work as a Precertification RN on August 2, 2010.

15. As a Precertification RN in the admissions department, Janoff was responsible for obtaining insurance carriers' authorization for patients' admission and determining whether patients met the criteria for the anticipated procedure.

16. By January 2011, the evening hours began to wear on Janoff due to fatigue and stiffness caused by PMR. She requested earlier hours, specifically the 7.30 am. to 4 pm shift, multiple times from January through July 23, 2011. Her requests were repeatedly denied. Meanwhile, a nurse was hired for a 7.30 am to 4 pm time slot.

17. With the reasonable accommodation of an earlier shift, she would have been able to perform her job. Without the reasonable accommodation, she could not perform her job.

18. Because of fatigue and stiffness as a result of PMR and because the Hospital would not provide the reasonable accommodation of earlier hours, she was forced to resign as of July 23, 2011.

## V.   Administrative Exhaustion

19. Janoff has satisfied the requirement of exhaustion of administrative remedies for both the ADA and PHRA having dually filed her charge of discrimination. A copy of the Notice of Right to Sue letter from the EEOC, dated May 1, 2012, is attached hereto as Exhibit "A."

## VI.  Causes of Action

### Count I — Violation of the Americans with Disabilities Act, 42 U.S.C. 12101 et. seq.

20. Janoff incorporates by reference all other paragraphs of the Complaint as if set forth fully herein.

21. Janoff was disabled within the meaning of the ADA.

22. Janoff had a physical or mental impairment that substantially limited one or more major life activity, including, but not limited to, performing manual tasks, standing, bending, lifting, and working. Further, her impairment substantially limited the operation of a major bodily function, including but not limited to, the immune and musculoskeletal systems.

23. Janoff was qualified for both the jobs of an RN in Bed Management, Case Management and the Transfer Center and of a Precertification RN with a reasonable accommodation of earlier work hours.

24. Janoff requested the reasonable accommodation of earlier work hours.

25. The Hospital discriminated against Janoff within the meaning of the ADA by refusing to provide the reasonable accommodation.

26. Because the Hospital refused to provide the reasonable accommodation, Janoff was forced to resign.

6

27. The Hospital engaged in discriminatory practices with malice and a reckless indifference to Janoff's rights.

28. The Trustees of the University of Pennsylvania have employed more than 500 people in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. 1981a(b)(3)(D).

29. As a direct and proximate result of the Hospital's violation of the ADA, Janoff was injured.

**WHEREFORE**, Janoff requests that this Court grant the relief requested below in the Prayer for Relief.

### Count II — Violation of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.* ("PHRA")

30. Janoff incorporates by reference all other paragraphs of the Complaint as if set forth fully herein.

31. Janoff was disabled within the meaning of the PHRA.

32. Janoff had a physical or mental impairment that substantially limited one or more major life activity, including, but not limited to, performing manual tasks, standing, bending, lifting, and working. Further, her impairment substantially limited the operation of a major bodily function, including but not limited to, the immune and musculoskeletal systems.

33. Janoff was qualified for both the jobs of an RN in Bed Management, Case Management and the Transfer Center and of a Precertification RN with a reasonable accommodation of earlier work hours.

34. Janoff requested the reasonable accommodation of earlier work hours.

35. The Hospital discriminated against Janoff within the meaning of the PHRA by refusing to provide the reasonable accommodation.

36. Because the Hospital refused to provide the reasonable accommodation, Janoff was forced to resign.

37. The Hospital engaged in discriminatory practices with malice and a reckless indifference to Janoff's rights

38. As a direct and proximate result of the Hospital's violation of the PHRA, Janoff was injured.

**WHEREFORE**, Janoff requests that this Court grant the relief requested below in the Prayer for Relief.

### Count III — the Family and Medical Leave Act, 29 U.SC. § 1201 *et seq.* ("FMLA")

39. Janoff incorporates by reference all other paragraphs of the Complaint as if set forth fully herein.

40. Upon returning to work in August 2010, Janof was entitled under FMLA to the same position or an equivalent position with equivalent employment benefits and pay.

41. HUP violated FMLA by failing to offer her the same position or an equivalent position with equivalent employment benefits and pay.

42. As a direct and proximate result of the Hospital's violation of FMLA, Janoff was injured.

**WHEREFORE**, Janoff requests that this Court grant the relief requested below in the Prayer for Relief.

### Prayer for Relief

Plaintiff respectfully requests this Court enter an Order in favor of Plaintiff and against Defendants requiring compensation for damages suffered in the form of lost wages (backpay); anticipated wages (front pay); inconvenience; punitive damages; reasonable attorney's fees and costs; and all such other relief as this Court deems just, equitable and proper.

**LAW OFFICE OF DAVID J. PERLMAN**

By\s\David J. Perlman
**David J. Perlman**
P.O. Box 705
Bala Cynwyd, PA 19004
484-270-8946
djp@davidjperlmanlaw.com

# EXHIBIT A

U.S. Equal Employment Opportunity Commission

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: **Ms. Esther F. Janoff**
25 Washington Lane, Apt. 409
Wyncote, PA 19095

From: Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, PH Suite 1300
Philadelphia, PA 19107-3127

[  ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2012-00131 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]   More than 180 days have passed since the filing of this charge.

[   ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]   The EEOC is terminating its processing of this charge.

[   ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[   ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[   ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*                                                                                    5/1/12

Spencer H. Lewis, District Director                                                 (Date Mailed)

Enclosure(s)

cc:   David J. Perlman, Esq. (for Charging Party)
      Sean V. Burke, Esq. (for Respondent)
      Trustees of University of Pennsylvania